IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DASIA BANKS,

                Plaintiff,

    v.

BARABOO SCHOOL DISTRICT,

                Defendant.

OPINION AND ORDER

20-cv-36-wmc

---

Plaintiff Dasia Banks, a former student in the Baraboo School District ("BSD"), filed this lawsuit against the district on January 15, 2020, seeking damages under Titles VI and IX of the Civil Rights Act of 1964 for race-based and sex-based harassment by fellow students in the district.  Before the court are two motions:  (1) Banks's motion for an order compelling BSD to provide full and complete responses to her First Set of Interrogatories and Document Requests that were served on April 24, 2020, dkt. 20; and (2) BSD's motion for a protective order prohibiting Banks from inquiring about certain topics and from obtaining any student records except as provided in the court's April 2, 2020 order, dkt. 36.

As explained below, I am granting both sides' motions in part and denying them in part.

BACKGROUND

## I.  The Complaint

Banks is a Black female who attended elementary, middle and high school in the Baraboo School District. Banks alleges that she was racially harassed by other students numerous times during her years in the district, especially during the 2017-2018 year when she was a student at Baraboo High School.  Banks alleges a number of specific instances during that year when she was subject to racial epithets and bullying by various white classmates, including PL, TS, MJ,

AG, LG, CG, LH, CC, BS, and DD.  Complaint, dkt. 1, at ¶¶ 44, 45, 48-53,  58-60, 65-66, 81-82.  One of these students, GI, wore clothing depicting the Confederate flag on multiple occasions and once deliberately showed Banks his Confederate belt buckle.  *Id*. at ¶¶ 52, 55, 69, 80.  Banks further alleges that BSD knew that its educational environment was racially hostile, but in spite of this knowledge, it took no meaningful action to address it.  In fact, she alleges, "[i]n spite of the persistent racial harassment Banks experienced at BSD, the only student substantially punished for anything was Banks."  *Id*. at ¶ 62.  Banks seeks damages for BSD's deliberate indifference to the racial harassment by her peers under Title VI.

In support of her Title IX claim, Banks alleges in February 2018, she was subject to sexual harassment and assault by fellow student CS, that staff was aware of the assaults, but staff took no action to stop them.  *Id*.  at ¶¶ 73-74.  Banks further alleges that prior to February 2018, BSD knew that CS had sexually harassed or assaulted at least one other female student.  *Id*.  at ¶ 75.

The last incident of sexual or racial harassment alleged in the complaint occurred around May 22, 2018, and Banks left the district on June 30, 2018.

## II.  The Viral Photo

Banks enrolled in a different school for the 2018-19 school year.  In November 2018, BSD became aware of a group photograph of about 60 of its male students taken on May 5, 2018, before Baraboo High School's prom.  All of the young men except one appear to be white, and several of them are performing a gesture with their right arms which appears to be the Nazi salute.  Banks was a student at the high school when the photograph was taken, but she does not

allege that she saw it or was aware of it at that time.  The photo went viral in November 2018, making national headlines and causing an uproar in the school district and the entire Baraboo community.  In response, BSD took a number of actions, including hiring an equity literacy specialist, Paul Gorski, to perform an equity audit of the district and make recommendations.

## III.  The Discovery Requests

Banks's First Set of Interrogatories 1-8 and Requests for Production (RFP) 1-4 ask BSD to identify and produce supporting documentation concerning all complaints made by or on behalf of a student and all complaints investigated by BSD between 2014 and June 30, 2018 related to:  (1) race discrimination or harassment; (2) sex discrimination, sexual assault, or harassment; (3) any other discrimination or harassment; (4) bullying; and (5) the Confederate flag.  Banks further requests that, for each complaint identified that was *not* investigated or for which no punishment was imposed,  BSD produce documentation stating the reason why the complaint was not investigated or why discipline was not imposed.  Pl.'s Req. for Prod. of Docs. No. 5-6, dkt. 22-1.

Banks's Second Set of Interrogatories and RFPs seek, among other things:  (1) all documentation and communications to and from BSD related to the Viral Photo; (2) redacted BSD student records and emails concerning any incidents of racial harassment, sexual harassment or sexual assault, including students who wore Confederate flag clothing, from *January 1, 2010 to the present*, and of these to identify the records of any boys who appeared in the Viral Photo; (3) communications and documents related to the "N pass;" (4) information, communications, and documents related to actions, trainings, and audits undertaken by the BSD

3

after June 30, 2018; and (5) the recommendations made to the district by Paul Gorski.  Dkt. 40-2.

## IV.  BSD's Motion for a Protective Order

BSD seeks an order under Fed. R. Civ. P. 26(c)(1)(d), forbidding Banks from seeking information, communications, or documents related to the following topics:

1. the "Viral Photo;"

2. the "N Word Pass;"

3. any alleged instances of sexual or racial harassment or discrimination that occurred or became known to BSD after May 22, 2018;

4. any actions taken by BSD after June 30, 2018, related to race or sex discrimination or harassment;

5. records of current and former BSD students, except as provided in the court's April 2, 2020 Order; and

6. any training or audits conducted by or for BSD after June 30, 2018.

## V.  This Court's April 2, 2020 Order

On April 2, 2020, this court granted the parties' stipulated petition for release of certain pupil records for the 13 specific students who had been identified in the complaint.  The records covered by the order were those related to the specific conduct that Banks had alleged in her complaint.  Dkt. 14.  The order directed BSD to submit the records to the court, which would in turn review them *in camera* to determine if they "are relevant and material to the credibility

or competency of any witness in the action pursuant to Wis. Stat. § 118.125(2)(f).[1]  Dkt. 14.

Consistent with that order, on April 15, 2020 the district filed the records with the court, under

seal and *ex parte*, for the court's *in camera* inspection.  Dkt. 16.  The court has not yet reviewed

those records.

ANALYSIS

## I.  Legal Framework

As noted above, Banks has asserted claims under Title IX and Title VI of the Civil Rights

Act of 1964.  Title IX provides in relevant part that "[n]o person in the United States shall, on

the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance."

20 U.S.C. § 1681(a).  Title VI provides the same guarantee but substitutes "on the basis of race,

color, or national origin" for "on the basis of sex."  42 U.S.C. § 2000d.  Given the similarity of

the statutes, "a decision interpreting one generally applies to the other."  *Doe v. Galster*, 768 F.3d

611, 618 (7th Cir. 2014).

When, as here, a plaintiff seeks to hold a school district liable for student-on-student

racial or sexual harassment, she must demonstrate that:  (1) the harassment was discriminatory;

(2) the school officials had "actual knowledge" of the harassment; (3) the harassment was "so

severe, pervasive, and objectively offensive that it  . . . deprive[s] the victims of access to

educational opportunities;" and (4) officials were "deliberately indifferent" to the harassment.

*Id*.  (citing *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

---

[1]  Dkt. 14.  The order further provided that any student records disclosed to the parties would be subject to a separately-entered protective order that the parties had entered into on April 2, 2020.  *See* dkt. 11.

Deliberate indifference only may be found based on a recipient's action (or inaction) to "known acts," a threshold requirement of which is proof of the recipient's "actual knowledge" of the harassment. *Davis*, 526 U.S. at 647-48. While a recipient need not possess actual knowledge of harassment directed "at a *particular plaintiff*," it "must still have actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.'" *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605-06 (7th Cir. 2008) (emphasis in original). "Thus, for example, if an individual is known to be a 'serial harasser,' a recipient may be found to have actual knowledge of that individual's misconduct and the attendant risk posed to other students." *Doe v. Bd. of Regents for Univ. of Wisconsin Sys.*, No. 19-CV-169-WMC, 2020 WL 4039345, at *7 (W.D. Wis. July 17, 2020) (citing *Hansen*, 551 F.3d at 606); *see also Doe I & II v. Bd. of Educ. of Chi.*, 364 F. Supp. 3d 849, 861 (N.D. Ill. 2019) (Title IX applied to plaintiff's claim that school had prior knowledge that school employee was a "serial harasser" such that he posed a great risk to female students). Importantly, neither Title VI nor Title IX tasks schools receiving federal funds with the arguably impossible task of maintaining an environment free of all racism, sexism, or bullying. 526 U.S. at 648 ("We stress that our conclusion here . . . does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action.").

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Because the purpose of discovery is to help "define and clarify the issues," relevance is to be construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Tice v. American Airlines, Inc.*, 192 F.R.D. 270,

272 (N.D. Ill. 2000) ("the scope of discovery should be broad in order to aid in the search for truth."). Importantly, relevant information does not need to be "admissible to be discoverable." Fed. R. Civ. P. 26(b)(1). At the same time, however, "[r]elevance in discovery is broader than relevance at trial; during discovery, 'a broad range of potentially useful information should be allowed' when it pertains to issues raised by the parties' claims." *Bank of Am., Nat'l Ass'n v. Wells Fargo Bank, N.A.*, 2014 WL 3639190, at *3 (N.D. Ill. July 23, 2014) (quoting *N.L.R.B. v. Pfizer, Inc.*, 763 F.2d 887, 889-90 (7th Cir. 1985)).

Relevance, however, is not the only benchmark under Rule 26. The 2015 amendments to Rule 26(b)(1) returned the concept of proportionality to that Rule (from 26(b)(2)(c)(iii)) in order to emphasize its importance. *See* Advisory Committee Notes, 2015 Amendment. Discovery not only must be relevant to a claim or defense but also "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party from whom discovery is sought may seek a protective order forbidding inquiry into certain matters or limiting the scope of discovery, where such an order is necessary to protect the party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1)(D).

Finally, this court must consider whether any of the information Banks seeks is privileged. Provisions of both Wisconsin state law and federal law provide certain protections for student records. Section 118.125(2) of the Wisconsin Statutes provides, in relevant part:

> All pupil records maintained by a public school shall be confidential, except . . .
>
> (f) Pupil records shall be provided to a court in response to subpoena by parties to an action for in camera inspection, to be used only for purposes of impeachment of any witness who has testified in the action. The court may turn said records or parts thereof over to parties in the action or their attorneys if said records would be relevant and material to a witness's credibility or competency.

The Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, similarly protects the confidentiality of student records, but allows such records to be disclosed pursuant to a court order. It provides that:

> (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information or as provided [elsewhere in the statute], unless—
> . . . . .
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.
>
> 20 U.S.C. § 1232g(b)(2)(B).

FERPA "does not provide a privilege that prevents the disclosure of student records. 'Rather, by threatening financial sanctions, it seeks to deter schools from adopting policies of releasing student records.'" *Ragusa v. Malverne Union Free School District*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008) (quoting *Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977)). Before disclosure of FERPA-protected documents pursuant to a court order, the party seeking disclosure "is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Ragusa*, 549 F. Supp. 2d at 292 (citations omitted). Importantly, "a

8

party seeking disclosure of education records protected by FERPA bears 'a significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.'" *Id*. (quoting *Rios*, 73 F.R.D. at 598).

In spite of her April agreement that any disclosure of confidential student records should follow the *in camera* review procedure prescribed by Wis. Stat. § 118.125(2)(f), Banks now argues that Wisconsin law is not controlling. Dkt. 18. Instead, she argues that disclosure of the student records is governed by FERPA's standard, which turns on the movant's need for the records rather than whether the records will be used for impeachment. Banks's current position is consistent with the Seventh Circuit's decision in *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981), which held that federal courts are not required to apply a state's privilege law when federal law supplies the rule of decision as to the claim. *See also* Fed. R. Civ. P. 501 (federal law of privilege applies to claims or defenses based on federal law). Banks also finds support in *Doe v. Galster,* No. 09-C-1089, 2011 WL 2784159, at *10 (E.D. Wis. July 14, 2011), which held that FERPA and not Wis. Stat. § 118.112(5) applied to disclosure of confidential student records in a case brought under Titles VI and IX.

BSD does not challenge the merits of Banks's legal position. Instead, citing the rule of judicial estoppel, it argues that this court should not apply FERPA because in April Banks stipulated that Wis. Stat. § 118.125(2) applies. This argument is unpersuasive. The rule known as judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 662 (7th Cir. 2019) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000)). *See also Davis v. Wakelee*, 156 U.S. 680, 689 (1895)("Where

9

a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.")

Here, Banks did not *prevail* on anything when she stipulated that this court's *in camera* review of confidential student records should be conducted under state law.  In fact, this court has not yet reviewed the records.  Although Banks has not explained why she changed position, BSD has not explained how it will be unfairly prejudiced if this court applies the proper legal test when deciding whether to order disclosure of confidential student records.  Accordingly, I shall apply FERPA where applicable, considering whether Banks's need for other students' records outweighs the privacy interests of those students.

In light of the inapplicability of Wis. Stat. § 118.125(2)(f) and BSD's concession that the records it has already produced *in camera* are relevant to Banks's complaints, the court sees no need to review those records.  Instead, BSD must disclose these records to Banks in accordance with any rules prescribed by FERPA.

## II.  Complaints Made By or Concerning Other Students

In response to Banks's broad request for all complaints of student harassment, BSD has agreed to provide all information "related to Plaintiff or complaints made on her behalf."  Dkt. 37, at 8.  However, BSD has declined to provide information unrelated to Banks, arguing that such information is irrelevant to her claims of racial or sexual harassment.  In support of its position regarding the proper scope of discovery, BSD cites a handful of cases from other

districts supporting its position.  Those courts found that prior incidents of harassment reported by other students was too far removed from the plaintiff's Title XI allegations, at least where the plaintiff did not allege a pattern and practice of mismanaging racial or sexual harassment investigations and did not allege that the defendant had responded differently to her report than it did to others on the basis of her race or sex.[2]   Noting that Banks has not asserted an equal protection claim, BSD argues that harassment of similarly situated students is not relevant.  At most, argues BSD, Banks would "be entitled to pupil records of the students she identified in her Complaint that she claimed the District had actual knowledge of prior behaviors.  Further, those records would be limited to similar situations as raised by Plaintiff."  Dkt. 37, at 10-11.

Operating under these parameters, BSD says that it will produce records concerning certain prior behaviors by students CS and GI, whom Banks alleged in her complaint were known by BSD to have engaged in prior or repeated instances of harassment.[3]   As for the remaining allegations in the complaint concerning other students, BSD argues that these were "either isolated instances or are general bullying rather than racial or sexual harassment" and therefore records concerning these students are irrelevant except for those records that relate specifically to Banks's allegations in the complaint.  *Id.* at 12.

In response, Banks argues that BSD focuses too narrowly on the specific students and allegations set forth in the complaint.  In Banks's view, evidence about "[t]he overall culture of the school and the existence of other complaints of racial or sexual harassment" are relevant to

---

[2] *Dibbern v. Univ. of Michigan*, No. 12-15632, 2015 WL 1510411, at *5 (E.D. Mich. Apr. 1, 2015); *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 96–97 (D.D.C. 2017).

[3] In fact, BSD has already produced these records to the court pursuant to the April 2, 2020 order.

establishing that BSD's response to her complaints was unreasonable.  Dkt. 21, at 12.  Banks goes on to argue: "For example, if there have been many previous complaints and investigations of student-on-student racial harassment and sexual assault by a particular student, it bolsters the case that the school knew there was a serious issue and makes their weak response to Ms. Banks' complaints more unreasonable."  *Id*. at 13.  Citing *Doe v. Galster*, No. 09-C-1089, 2011 WL 2784159 at *9 (E.D. Wis. July 14, 2011), Banks further argues that she is entitled to find out what BSD did to "stop harassment of similarly situated students."  Finally, plaintiff cites cases from other districts allowing a Title VI or IX plaintiff to pursue discovery of prior incidents of harassment reported by other students.  *Id*. at 21.[4]

Having considered the arguments and case law cited by the parties, I conclude that, as currently framed, many of Banks's requests about prior complaints of harassment by other students seek information too far removed from her claims to be discoverable.  As a starting point, it is important to focus on what Banks actually has alleged in her complaint.  Although Banks clearly alleges a pervasive racist culture at BSD, she does not allege a pervasive sexist culture.  Instead, her more tightly-focused sex-based allegations center on her sexual assault by CS and BSD's awareness of similar misconduct by CS in the past.  Banks does not allege that BSD handled her complaint differently than it handled other complaints of sex-based discrimination, or that BSD had a pattern or practice of ignoring such complaints.

---

[4] *T.C on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, No. 3:17-CV-01098, 2018 WL 3348728, at *13–14 (M.D. Tenn. July 9, 2018); *Dahmer v. W. Kentucky Univ.*, No. 118CV00124JHMLLK, 2019 WL 1781770, at *3 (W.D. Ky. Apr. 23, 2019); *Mason v. Roman Catholic Archdiocese of Trenton*, No. CV1810733MASZNQ, 2019 WL 5906837, at *4 (D.N.J. Nov. 8, 2019).

Accordingly, as far as sexual harassment is concerned, I agree with BSD that complaints brought by other students are too far removed from Banks's allegations unless they involved CS, who is alleged to be a serial harasser.  As noted above, BSD acknowledges the relevance and discoverability of prior complaints of sexual discrimination, sexual harassment, and sexual assault by CS, even if they were made by other students.

Banks' broader claims of race-based harassment require broader disclosures by BSD, including complaints by or about other students, including but not limited to those students identified in Banks's complaint.  Construed broadly, Banks's complaint alleges more than general student-on-student harassment.  Banks has alleged that BSD was aware of and tolerated a racist culture, particularly at the high school, and that BSD's deliberate indifference led to the racial harassment to which Banks was subject by GI and others.  Moreover, although BSD characterizes some of Banks's allegations concerning her fellow students as alleging merely "bullying," several of these instances were accompanied by racial slurs. *See, e.g.,* Complaint, ¶¶ 48, 49, 51, 58, 66.  Thus, evidence showing that BSD received a large number of complaints about similar racial harassment but responded tepidly could help Banks establish that BSD was aware of risks to minority students like Banks that were "so great that they are almost certain to materialize if nothing is done," *Hansen*, 551 F.3d at 605-06.

Ultimately, it will fall to Banks to show that any prior incidents are sufficiently tied to her claims as to give rise to BSD's liability.  At the discovery stage, however, Banks is entitled to explore the extent to which BSD received prior complaints about racial harassment and any actions that it took in response.  Given that the Confederate flag is widely–but not universally– viewed as a racist symbol, *see, e.g.,* adl.org/education/references/hate-symbols/confederate-flag,

13

complaints received by BSD about other students wearing or displaying the Confederate flag on school grounds would fall into this category.

That said, Banks's discovery requests are too broad. Taking into account the specific allegations of her complaint, the limited value of the information Banks seeks, and the burden imposed on BSD by Banks's wide-ranging discovery requests, I am limiting the scope of discovery of other student complaints or incidents of racial harassment or racially offensive behavior as follows:

*First*, Banks is not entitled to discovery of any and all alleged incidents of "any kind" of harassment or bullying by other students. Title VI aims to remedy a district's failure to respond reasonably to known risks of severe and pervasive *race*-based harassment, not to impose liability for "simple acts of teasing and name-calling among school children[.]" *Davis*, 526 U.S. at 652. Thus, a complaint by Student A that Student B pushed him into his locker on a regular basis would not be relevant to Banks's Title VI complaint absent evidence that Student B was motivated by racial animus towards Student A and that BSD was aware of this. Complaints of bullying or harassment not targeted to or motivated by the victim's race do not tend to show a racially-hostile learning environment, no matter how many such complaints BSD may have received or investigated. Therefore, BSD need not produce information or documents concerning any reports of student-on-student harassment or other alleged misconduct having nothing to do with race. Close calls, if any, should be decided in favor of disclosure.

*Second*, discovery of complaints of racial harassment involving students not named in the complaint must be limited to those made at the high school. Most of the racial incidents alleged in the complaint occurred during the 2017-2018 school year while Banks attended the high

school.  Although Banks alleges isolated incidents of peer-to-peer racial harassment in primary and middle school, the facts alleged in her complaint indicate that the harassment did not become "so severe, pervasive, and objectively offensive" as to interfere with her education until she was a student at Baraboo High School.   (Of the students whom she alleges harassed her in high school, only one, LH, had "harassed" her in middle school, but Banks does not specify the nature of this harassment.)   Accordingly, Banks's discovery requests must be narrowed to encompass only documented complaints or investigations of racial harassment or racially offensive behavior at Baraboo High School.

*Third*, BSD need only produce information and documents concerning the time period June 30, 2016 to May 22, 2018.  As updated in her second set of discovery requests, Banks seeks information about complaints raised by other students up to seven years before the repeated racial harassment by her peers that she alleges in her complaint.  Such complaints are too remote in time to show that BSD responded unreasonably to *her* complaints of student-on-student harassment in the high school and are not proportional to the needs of the case. Likewise, complaints that BSD received about other students *after* the last alleged incidence of harassment reported by Banks would not show knowledge on BSD's part nor that its response to Banks's reports was unreasonable.

*Fourth*, BSD need only produce information concerning complaints of racial harassment at the high school that are documented, either in one of BSD's web-based information systems (Infinite Campus and eduCLIMBER), or in records otherwise maintained and searchable, such as the Title XI coordinator's notebooks.  In other words, BSD is *not* required to interview all current and former staff members in the district to see if they recall any racial incidents that they

may not have documented.  I recognize that requiring BSD to search its databases is not without burden given the absence of a readily-available "tag"– such as "racially-offensive"– that would permit either program to readily identify and compile the kinds of incidents about which Banks seeks information.  However, that burden has been substantially reduced as a result of the other limits on discovery set forth in this order.

*Fifth*, with the exception of the high school students named in the complaint who Banks alleged harassed her, any educational records that BSD produces in response to Banks's discovery requests must redact all personally identifiable information.   This avoids the confidentiality concerns addressed in FERPA.  *See U.S. v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002) (noting that parties "may still request student disciplinary records that do not contain personally identifiable information. Nothing in the FERPA would prevent the Universities from releasing properly redacted records."); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008) (same); *Bd. of Tr., Cut Bank Pub. Sch. v. Cut Bank Pioneer Press*, 337 Mont. 229, 160 P.3d 482, 487 (2007) (noting that "other jurisdictions have held that once a record is redacted, it no longer contains 'information relating directly to a student' and is therefore not an educational record under FERPA") (collecting cases).  If Banks determines after receiving responsive information that she has a need for a particular student's personally identifiable information, then she can move for an order requiring unredacted disclosures.

*Sixth*, as for the students named in the complaint (besides CS and GI) who Banks alleges harassed her, Banks is entitled to discover whether any of these students was the subject of prior complaints or investigations of racial harassment or racially offensive behavior.  Although BSD notes that Banks has not alleged that BSD was aware that any of these students were "serial

harassers" as she alleged with respect to CS and GI, that information would not necessarily be known to Banks. Given the relevance of this information to Banks's claims and her inability to discover it by other means, I find that Banks's need for this information outweighs the privacy needs of those particular students. Accordingly, to the extent that any of the students alleged in the complaint to have harassed Banks were the subject of prior complaints or investigations of racial harassment, harassment of minority students, or racially offensive behavior, those records must be disclosed in accordance with FERPA.

### III. Incidents, Trainings, or Other Actions by the District After Plaintiff left the District

Banks's Second Set of Interrogatories and Document Requests seek a variety of information concerning events and actions taken by BSD after Banks left the district, including all communications regarding BSD's response to the Viral Photo and a copy of Paul Gorski's recommendations. Dkt. 40-2 (Nos. 1-5, 7, 10, 11, 18). BSD seeks an order barring all discovery on such topics, arguing that "[h]ow the District responded to incidents after Plaintiff left, or what trainings or actions the District continued to engage in after Plaintiff left simply have no bearing on her pending claims." Dkt. 37, at 19. BSD further argues that production of all the materials Banks is seeking would be unduly burdensome, estimating that responding to Banks's requests concerning BSD's activities after she left the district would consume 151.5 hours. According to BSD, more than half of these hours would be spent responding to subparts r-fff of Request No. 7, which seeks documentation of "all forms of communication" for 41 "Equity Actions" that BSD took or planned after Banks left the district.

Banks responds that BSD's stepped-up efforts to address systemic racism, including students' use of the "N-word" and displays of the Confederate flag, after she left the district are relevant to showing that its responses to her complaints of race-based harassment were unreasonable.

Without making any findings about whether such evidence would be relevant or admissible at trial, I find that some of the evidence Banks seeks pertaining to BSD's effort to address racism in its schools shortly after Banks left the district is relevant under the broader discovery standard, in that it at least has the potential to be helpful to Banks's claims. In particular, the audit performed by Gorski, the equity literacy specialist hired by BSD in response to the Viral Photo, could contain information about the culture at the high school and BSD's efforts (or lack thereof) to address racial harassment during the time frame at issue in the complaint, which could tend to support Banks's claim that BSD was deliberately indifferent to her complaints of racial harassment by her peers. Moreover, by BSD's admission, responding to Banks's requests for such information (Request Nos. 10 and 11), will require only 4.5 hours. Accordingly, Banks is entitled to this information.

Banks's other requests, however, are beyond the proper scope of discovery. In particular, neither the Viral Photo nor BSD's related external and internal communications has any tendency to clarify the issues in this case or to establish that BSD was deliberately indifferent to Banks's complaints of severe and pervasive sexual and racial harassment. In this court's view, the Viral Photo is relevant only insofar as it triggered a thorough examination of BSD's policies and practices concerning racism and racial harassment in its schools by way of the Gorski audit. The "N-Word Pass" refers to an incident that occurred after Banks left the district, so it is

18

irrelevant.  And requiring BSD to produce every piece of correspondence related to every planned "equity action" agenda item for the two-year period after Banks left imposes an undue burden on BSD that is not proportional to the needs of this case.

## ORDER

IT IS ORDERED that:

1.  Banks's motion for an order compelling BSD to provide full and complete responses to her First Set of Interrogatories and Document Requests that were served on April 24, 2020, dkt. 20, is GRANTED IN PART and DENIED IN PART; and

2.  BSD's motion for a protective order forbidding Banks from inquiring about certain topics or from obtaining any student records except as provided in the court's April 2, 2020 order, dkt. 36, is GRANTED IN PART and DENIED IN PART.

3.  BSD must provide full and complete responses to Banks's discovery requests, in accordance with any requirements prescribed under the Family Educational Rights and Privacy Act of 1974 (FERPA), with the ***exception*** of the following topics/information:[5]

> a. All information, communications, and documents related to the "Viral Photo," except insofar as the photo may have been discussed in Paul Gorski's audit or communications related thereto;
>
> b. All information, communications, and documents related to the "N Word Pass;"
>
> c. All information, communications, and documents related to any alleged instance of sexual or racial harassment or discrimination which occurred or became known to the Baraboo School District after May 22, 2018;
>
> d. All information, communications, and documents related to any actions taken by the Baraboo School District after June 30, 2018, related to race or sex discrimination or harassment, except as requested in Banks's Second Request for Production of Documents Nos. 10-11;

---

[5] To be clear, this is a list of what BSD does ***not*** need to provide.  Note that some subparts on this list carve out exceptions that BSD ***does*** need to provide.

e.  All information, communications, and documents related to all current and former students of the Baraboo School District, except that BSD must produce:

   I. Information, communications, and documents regarding prior complaints or investigations of racial harassment, harassment of minority students, or racially offensive behavior alleged to have been committed by PL, TS, MJ, AG, LG, CG, LH, CC, BS, GI, and DD, and prior complaints or investigations of sexual harassment by CS;

   ii. Redacted documents, including but not limited to emails and behavioral records, related to any Baraboo High School student for whom a report of racial harassment, racially offensive behavior, or wearing Confederate flag clothing was made between June 30, 2016 and May 22, 2018, and documented in eduCLIMBER, Infinite Campus, or in records otherwise maintained and searchable, such as the Title XI coordinator's notebooks; and

f.  All information, communications, and documents related to any training or audits conducted for or by the Baraboo School District after June 30, 2018, with the exception of the audit conducted by Paul Gorski, correspondence, communications, and documents produced by BSD in connection with that audit, and the findings and recommendations of that audit.

Entered this 25th day of September, 2020.

        BY THE COURT:

        /s/

        _____
        STEPHEN L. CROCKER
        Magistrate Judge