IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DASIA BANKS,

                  Plaintiff,

    v.

BARABOO SCHOOL DISTRICT,

                  Defendant.

ORDER

20-cv-36-wmc

---

Before the court is a set of discovery motions dating back to January. In a July 22, 2021 letter, plaintiff Dasia Banks asked for a status conference because the motions have not been decided. Dkt. 165. In this order I am ruling on the motions that are within my purview, deferring to Judge Conley on the parties' more general discovery disputes and granting the request to hold a status conference. The pending motions are listed by docket number:

**68: Defendant's motion to amend briefing schedule**

Defendant Baraboo School District (BSD) filed this motion in January, 2021. In March 2021, the court re-set the schedule, *see* dkt. 161. As Banks observes, however, technically BSD's motion remains pending. It is denied as moot. As noted below, we probably are going to reset the schedule again.

**94: Plaintiff's motion for a protective order.**

This motion seeks court a court ruling on whether/how Banks may use documents produced by a former BSD employee–Dr. Danielle Scott–at her deposition. BSD objects to Scott even possessing these documents and it objects to any use of them in this lawsuit. In her

motion, Banks asks that the court allow her to use these documents subject to suggested restrictions.

BSD had advised Banks that it views the disclosure of these documents to be a violation of FERPA (and state law), and BSD has demanded that Banks destroy the documents. Banks doesn't want to do that; in order to obtain the court's imprimatur on her use of these documents, Banks has moved for an order allowing her to disclose to her expert witnesses the documents produced by Scott, with all names redacted from the documents, disclosure limited to attorneys' eyes only (AEO) and an order that the documents be destroyed *after* this lawsuit has concluded. Brief in support, dkt. 96.

Scott, a third party formerly employed as BSD's Title IX coordinator, provided a relatively generic sworn statement to Banks's legal team in November, 2020. *See* Dkt. 77. BSD deposed Scott on January 22, 2021. BSD's notice of deposition asked for production of documents, but did not request BSD records, pupil records or records related to investigations. At her deposition, Scott produced 11 reports of investigations she conducted between 2013 and 2017 while she was employed by BSD. The documents are listed in BSD's opposition brief, dkt. 135 at 2-3. Scott testified at her deposition that she communicated with one of Banks's attorneys before her deposition to express her uncertainty whether she was permitted to disclose her investigation reports with student names included; Scott testified that the attorney told her that it was appropriate for her to disclose the investigation reports, including the students' names, because there was a protective order in place in this lawsuit. *See* dkt. 135 at 3-4.[1] Scott

---

[1] Attorney Kinney has submitted a sworn declaration claiming otherwise. Attorney Kinney alleges that when he and Scott conversed on January 19, 2021, she told him that "she had some materials with confidential information" and "that was the extent of the specifics she shared with me during that conversation." Based on that, he told Scott that "there was a protective order mandating confidentiality, so any document she produced would be protected by that confidentiality." Dkt. 98 at ¶ 8.

explained that she made copies of these reports before leaving BSD's employment and she took the copies with her.  (BSD subsequently established that on Scott's last day of work, she copied her District Google Workspace Drive (which contained the reports at issue here) to her private Google account. *See* dkts. 157-159.)  BSD asserts that it was completely unaware that Scott had copies of these reports and it did not know that she intended to produce them at her deposition.

BSD argues that with the exception of one specified cover letter and report, it is undisputed that all of the reports kept by Scott and disclosed by her at her deposition are confidential pupil records under both Wisconsin law and federal law.  BSD contends that Scott was not entitled to maintain copies of these records after she left her position with BSD, so her very possession of them was a violation of Wis. Stat. § 118.125(2)(d) and 34 C.F.R. § 99.31(a)(1)(i)(A).  These same statutes forbid redistribution of confidential records to non-employees, and federal law mandates parental consent prior to any disclosure to third parties. Further contends BSD, Scott's retention of these records violated BSD policies.  *See* dkt. 135 at 7, n.3.

Next, BSD contends that Scott's production of these reports violated the protective order entered by the court (dkt. 11 at 4-5, ¶ 5.a.), which Scott testified to having signed before she was deposed.  Taking Scott at her word, BSD also chastises Banks's lawyer for telling her it was okay to proceed as she did.  It is difficult to reconcile the specificity of Scott's testimony about how she voiced her confidentiality concerns to Banks's attorney with Attorney Kinney's declaration that their conversation was much vaguer than Scott recalls.  I'm going to give Attorney Kinney the benefit of the doubt as an officer of the court, but if the outcome of this

motion was a closer call and this particular discrepancy mattered, then I would hold an evidentiary hearing and make credibility determinations.

BSD is not done: in its final argument, it responds to Banks's suggestion that she be allowed to retain and use redacted copies of the records by pointing out that "***this Court has already ruled that Plaintiff is not entitled to these records.***" Dkt. 135 at 9, double-emphasis in original.

BSD is correct on every point.  The fact that Banks's attorneys view this information as helpful to her case is not a ground to condone her use of it.  Scott had no right to take these records with her when she left BSD's employ, she had no right to disclose them to anyone, ever, and Banks had no right ever to see them, let alone to use them in this lawsuit.

Banks expresses puzzlement at the notion that her lawyers should "destroy" the records provided by Scott.  Counsel should think of it as the equivalent of a privilege clawback.  All of these documents are docketed under seal and ex parte, *see* dkt. 134, so the record is made. Anyone who needs to see them can. That does not include Banks's legal team, which has no right to keep "backup" copies when it never should have received these documents in the first place.

Banks's motion for a protective order is denied.  Banks is ordered to destroy/delete/purge all hard copies and ESI versions of the documents improperly disclosed by Scott.  I am putting a 10-day delay on this destruction order in the event that Banks chooses to appeal it.

### 126: Defendant's second petition for release of pupil records

BSD has moved pursuant to 20 U.S.C. § 1232g for the release of more pupil records of specific BSD students. *See* dkt. 126 at 2-3.  Although the parties petitioned jointly for the first

4

set of disclosures, BSD proffers that Banks will not join this motion unless another student is added whom Banks claims engaged in racially harassing behavior that Banks then reported to Officer Pichler.  According to BSD, Banks has incorrectly attributed remarks made by a different student (with the same first name) to her requested add-on.  BSD reports that the correct student is on its disclosure list and that Banks never previously has identified her requested add-on student as having engaged in racially harassing behavior toward Banks.

In response, Banks does not actually oppose BSD's petition; rather, she contends that if BSD is allowed to petition for the release of more student records, then Banks should be allowed to do so as well. Banks posits that there may be other students with relevant information whose records also should be ordered released.  She mentions her requested add-on student and "the students [*who*] participated in Dr. Gorski's equity audit and assessment of the BSD."  Dkt. 142 at 5. As for the add-on student, Banks states that she is "a classmate with information regarding racial harassment and discrimination at the BSD."  *Id.* at 4.  Because only BSD knows the names of these students, Banks is not in a position to identify them.  *Id.* at 5. The email thread between the parties' attorneys, dkt. 127-1, provides some context for this request, as does this court's September 25, 2020 order, dkt. 46, cited by both sides in their email exchange.

In a reply letter, dkt. 145, BSD clarifies that its pending petition seeks production of records only of students whom Banks has identified as having harassed her.

At this point the court is going to issue the second petition as is.[2]  It will not include the add-on student requested by Banks: Banks's vague declaration that this student has information

---

[2] BSD claims to have attached a draft order to its motion, *see* dkt. 126 at 4.  It did not.  If BSD needs something more from the court than this order, then it should promptly submit its proposal.

regarding racial harassment and discrimination at BSD does not suffice to put her confidential student records in play.  Further, neither Banks's brief nor the January 2021 email exchange refutes BSD's claim that Banks has identified the wrong person.  If Banks wants to obtain this student's records, then she will have to file what would be the third petition for disclosure.

To the same effect, Banks is free to provide a more persuasive explanation why the confidential records of students involved in the Gorski report are discoverable.  The court is not going to sign off on this without a more robust showing by Banks that this information is relevant to her claim(s).  At least from the court's perspective, we are in a gray area here.  Is testimony from other students about a racially (and sexually) hostile atmosphere at the high school relevant to Banks's actual claims under Title VI and Title IX?  Would the court admit such evidence at trial?  If so, then is Banks entitled to anything more than the names of these students?  It will be up to Banks in the first instance to make her case for additional disclosures.

At this juncture in this lawsuit, it will be Judge Conley who will rule on Banks's request because his view of what is relevant and admissible is determinative.  This dispute is a subset of a broader issue raised in Banks's July 22, 2021 letter to the court, dkt. 165.  There, Banks flagged Judge Conley's March 1, 2021 order denying without prejudice Banks's various requests to allow additional depositions and to expand the scope of discovery.  *See* dkt. 160 at 12.  Duly noted.  Banks is going to have to file a new motion that updates the court on where she finds herself with regard to discovery, where she wants to go with additional discovery, and why the court should allow her to do so, almost certainly over BSD's objection.  After hearing from both sides, Judge Conley will rule on this motion.

**136:  Plaintiff's motion for order finding waiver of attorney-client privilege**

One set of facts that Banks intends to introduce at trial in support of her Title VI claim is that  BSD and its students understood that displaying the confederate  flag (the confederate battle flag) intimidated Black students; white BSD students nonetheless intentionally displayed the confederate flag and related paraphernalia at school in order to harass Black students; BSD was aware of this use of the confederate flag by white students; BSD did not ban the display of the confederate flag by white students.  Against this backdrop, Banks's attorneys asked BSD employees at their depositions *why* BSD did not ban the confederate flag; the witnesses uniformly responded that they didn't ban the flag based on advice of counsel.  When Banks's attorneys asked the witnesses what BSD's attorneys had advised, BSD's attorneys invoked the attorney-client privilege and directed the witnesses not to answer.

The instant motion resulted.  Banks claims that BSD has implicitly waived the privilege by raising advice-of-counsel as a defense.  In its response, BSD reports that it is *not* raising advice of counsel as a defense and that it has never implicitly or explicitly waived its attorney client privilege on this issue. *See* dkt. 156.

Based on BSD's announcement that it is not relying on advice of counsel as a defense to Banks's Title VI defense, there is no basis for the court to find a privilege waiver. It's that simple. Banks has not shown that BSD's assertion of the privilege fails any of the eight requirements of the Wigmore formulation employed by the Seventh Circuit and cited by Banks.  *See* dkt. 136 at 29, citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).  Banks cannot bootstrap a finding of waiver by raising this topic with BSD's employees on her own.  In this situation, Banks has wielded the sword and BSD has defended with its shield.  That's the way

8

it's supposed to work.  *See Motorola Solutions, Inc. v. Hytera Communications Corp.*, 2018 WL 1804350 at *5 (N.D. Ill. 2018) ("the attorney-client privilege cannot at once be used as a shield and a sword.  But, while the sword stays sheathed, the privilege generally stands"), citations omitted; *see also United States v. Kmart Corp.*, 2017 WL 3034342 (S.D. Ill. 2017):

> Kmart is not wielding any swords in this case: Kmart has assured the Court on multiple occasions that it will not assert a good faith reliance on counsel defense at trial.  It has not affirmatively placed its communication with counsel at issue in this case.  Therefore, Kmart has not waived the attorney-client privilege.  Accordingly, Relator's motion to compel is **DENIED.**

> *Id.* at * 3, double emphasis in original.

BSD's decision not to ban the flag speaks for itself and if the court allows evidence on this topic at trial, then BSD will not be allowed to explain why it made that decision unless Banks raises the topic after receiving permission from the court to do so.[3]

This circles back to the more general observation made above: the instant privilege waiver dispute is just one  skirmish in the parties' much larger relevancy battle that will require a great deal of guidance from  Judge Conley, at the Rule 56 stage, *in limine,* or both.  BSD touches on this by citing to Judge Peterson's opinion in *Bowe v. Eau Claire Area School District*, 2017 WL 1458822 (W.D. Wis. 2017).  How and when Judge Conley wishes to engage in this exercise is up to him.

---

[3] *But see Jankowski v. Dean Foods Co.*, 2019 WL 12528767 at *7 (N.D. Ill. 2019) (attorney-client communications are not put in issue such that privilege would be waived merely because counsel's advice may have influenced a litigant's state of mind and therefore is relevant to that state of mind)

That said, it's hard to imagine that if the court were to grant the instant motion it would result in the disclosure of anything useful to Banks or admissible at trial.[4]  First, as just noted, the court will have to determine *in limine* whether the jury even will hear about BSD's failure to ban wearing the confederate flag.  If BSD's failure to ban is admissible, then BSD will be held to its decision not to rely on advice of counsel.  But what if *Banks* asks to open this door at trial and Judge Conley lets her?  How could knowing *what* BSD's attorneys told BSD be helpful to Banks at trial?  Given how tangential this would be to the elements of a Title VI claim, it is unlikely that the court would allow Banks to challenge or impeach at trial the accuracy of the legal advice BSD received about banning the confederate flag.  Further, even if we were to assume, *arguendo*, that BSD received incorrect advice, how does that establish BSD's deliberate indifference?  After all, clients ordinarily are entitled to rely on the advice they receive from their attorneys, even if that advice turns out to be incorrect.  *See, e.g., Budnick v. Town of Carefree*, 2006 WL 8440534, *10 (D. AZ. 2006);  *Roy v. County of Lexington, S.C.*, 141 F.3d 533, 548 (4th Cir. 1998); *cf. Shrewsbury v. Williams*, 439 F.Supp. 3d 765, 783 (W.D. Va. 2020).

In any event, Banks's motion to find a waiver of attorney-client privilege by BSD is denied.

### Dkt. 165: Joint request for a status conference

As Banks notes in her July 22 letter, time under the existing schedule is running short and both parties are concerned.  The court will hold a telephonic status conference to address these concerns.  The court is willing to provide relief from the current deadlines; whether we are in a

---

[4] To be clear, I am denying their motion because BSD has properly asserted and has not waived the attorney-client privilege.  Period.

position at this juncture to set a new, firm schedule is debatable.  The parties should be prepared to discuss this with the court at the hearing.

ORDER

IT IS ORDERED that:

(1)    Defendant's motion to amend the briefing schedule, **dkt. 68**, is DENIED as moot.

(2)    Plaintiff's motion for a protective order, dkt. **94**, is DENIED. Not later than August 6, 2021 plaintiff shall destroy/delete/purge all hard copies and ESI versions of the documents improperly disclosed by Scott.

(3)    Defendant's second petition for release of pupil records, dkt. **126**, is GRANTED.  Defendant may release and disclose the records specified for the students identified in its motion at pp. 2-3.

(4)    Plaintiff's motion for order finding waiver of attorney-client privilege, **136**, is DENIED.

(5)    The parties' request for a telephonic status conference, dkt. **165**, is GRANTED.   The Clerk of Court is directed to schedule the call.

Entered this 27th day of July, 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge